IN THE DISTRICT COURT OF THE UNITED STATES

DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Edward Lamar Smoak, Jr., ) | |
| ) | Civil Action No. 6:14-2445-MGL-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Sergeant Donnie Rich, ) | |
| Sergeant Kenneth Lloyd, and ) | |
| Kyle Arens, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

The defendants filed a motion for summary judgment (doc. 44) on November 10, 2014. By order filed on November 12, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. The plaintiff filed a response in opposition to the motion for summary judgment on February 13, 2015, which he styled as "Plaintiff's Motion for Rule 56(d)" (doc. 75).

## FACTS PRESENTED

The plaintiff is currently serving a 30-year sentence at Lieber Correctional Institution ("Lieber") in the South Carolina Department of Corrections ("SCDC") following his fifth conviction for armed robbery. The alleged events giving rise to this lawsuit occurred

on June 19, 2012, during the plaintiff's incarceration at Lee Correctional Institution ("Lee"). The defendants are correctional officers at Lee (doc. 44-4, Arens aff. ¶ 3; doc. 44-3, Rich aff. ¶ 3).

*Plaintiff's Allegations and Evidence*

The plaintiff alleges that on June 19, 2012, defendants Rich and Lloyd, along with another officer, moved Inmate Tovio Clark into the plaintiff's cell. About ten minutes after the correctional officers left the cell, Inmate Clark pulled a knife and told the plaintiff that he did not want the plaintiff as his cellmate and that the plaintiff needed to beat on the door to get defendant Rich to remove him from the cell or he would hurt the plaintiff. The plaintiff then kicked the cell door. After some time, defendant Rich came to the door and asked the plaintiff why he was kicking the door. The plaintiff then told defendant Rich that he and Inmate Clark were going to fight and that he feared for his life and wished to be placed in "protected custody." According to the plaintiff, defendant Rich then laughed, said he did not care what happened, and walked away. The plaintiff states that when officers approached the door Inmate Clark hid his homemade knife. The plaintiff began kicking the door again until defendant Rich returned along with defendant Lloyd. The plaintiff again told the officers that he and Inmate Clark were going to fight and that he was afraid for his life. The plaintiff claims Inmate Clark stated, "What do I got to do to get him out of here? Kill this motherfucker?" The plaintiff claims that defendant Lloyd stated that he did not care what they did to each other, but they were not going to leave the cell. The plaintiff asked to speak to a Lieutenant, and the officers indicated they would call defendant Arens (doc. 66, 2nd amended comp. at 3-5).

The plaintiff claims Inmate Clark told him that he had to convince the officers to get the plaintiff out of the cell, but he had better not tell the officers about the knife or Inmate Clark would stab the plaintiff. The plaintiff beat on the door until defendants Rich and Lloyd returned. The officers told the inmates that they called Lt. Arens who told them

2

that it was not his job to move inmates as that was the job of Classifications. When the officers left, Inmate Clark told the plaintiff that if he busted the window, the officers would have to take him to lock-up. According to the plaintiff's allegations in the complaint, Inmate Clark told the plaintiff to stand back, and Inmate Clark swung a lock, which was attached to a cord made from his sheet, and broke the cell window. Inmate Clark told the plaintiff to tell the officers that he (the plaintiff) broke the window. Defendants Rich and Lloyd responded and asked the plaintiff why he broke the window. The plaintiff told the officers that it was because he feared for his life and the officers would not do anything. Defendant Rich then administered a burst of chemical munitions into the plaintiff's face (*id.* at 5-9).

The plaintiff claims that the officers walked away, and Inmate Clark then attacked him by swinging the lock and striking him in the head and stabbing him once in the hand and the wrist. The plaintiff was knocked out and woke to find Inmate Clark trying to strike him again with the lock. The plaintiff kicked Inmate Clark "landing at least one blow which caused him to slip and fall hitting his head on the toilet. Plaintiff then lost consciousness again." Defendants Rich and Lloyd called first responders, handcuffed the inmates, and took them to Medical. The plaintiff was then taken to the Tuomey Hospital emergency room (*id.* at 10-11).

According to SCDC medical records attached to the plaintiff's complaint, he was taken to Medical after the altercation and was found to have bleeding lacerations to his head and deep scratches on his back. The nurse cleaned the lacerations and wrapped the plaintiff's head with dressing. The plaintiff was then sent to the emergency room at Tuomey Hospital. X-rays and a CT scan revealed a minimally displaced frontal skull fracture, a boxer's fracture of the right hand, and two scalp lacerations. The plaintiff received seven stitches and eight staples and was prescribed vicodin for pain (doc. 1-3, SCDC med. records; doc. 1-10, x-ray and CT scan).

The plaintiff was charged and found guilty of fighting with a weapon. The plaintiff appealed the charges to the Administrative Law Court, which dismissed the appeal after the SCDC removed all sanctions against the plaintiff (doc. 66, 2nd amended comp. at 13-21).

The plaintiff alleges one cause of action in his complaint: that the defendants violated his Eighth Amendment rights by failing in their duty to protect him from harm at the hands of another inmate (*id.* at 21-25). As relief, he requests compensatory, nominal, and punitive damages (*id.* at 25-26). The plaintiff attached to the complaint his grievances, disciplinary report and hearing transcript, medical records, and Administrative Law Court filings (*id.* at 27-79).

The plaintiff attached the following documents as exhibits to his response in opposition to the motion for summary judgment: the plaintiff's affidavit in which he contends that he "has been denied" certain evidence so that he cannot present the testimony of six inmates who would support his version of the incident (doc. 75-2); the plaintiff's mother's declaration in which she describes a phone call she received from an unknown person at Lee on the night of the incident and the trouble she has had in getting information about her son (doc. 75-3); the plaintiff's affidavit in which he reiterates the claims in his complaint (doc. 75-4); and four affidavits of inmates who did not witness the incident but state, *inter alia*, that it is "common knowledge among inmates and officers" that the reason an inmate would tell an officer that "he and his cellmate are going to fight is because he is trying to get to protective custody" (docs. 75-5, 75-6, 75-7, 75-8).

**Defendants' Evidence**

According to the SCDC incident report and the affidavit of defendant Rich, on June 19, 2012, at or around 10:00 p.m., defendants Rich and Lloyd, along with another correctional officer, moved Inmate Tovio Clark from cell #2134 in Chesterfield North to the plaintiff's holding cell, # 2224, in Chesterfield South (doc. 44-5, incident rep.). When the

4

officers moved Inmate Clark into the plaintiff's cell, the plaintiff stated that he and Inmate Clark did not get along and that they were going to fight (*id.*). Defendant Rich knew this was a commonly used excuse by inmates but had no reason to believe the plaintiff's statement was truthful as, to the best of his knowledge, the plaintiff did not have a history of fighting or trouble with any other inmates, and neither the plaintiff nor Inmate Clark ever filed a request for protective custody. Further, to the best of defendant Rich's knowledge, Inmate Clark never voiced displeasure with his assignment to the plaintiff's cell, nor did he threaten the plaintiff (doc. 54-1, Rich aff. ¶¶ 8-10).[1] Defendant Rich nonetheless informed Lt. Arens of the plaintiff's statement, and Lt. Arens informed defendant Rich that Classification had assigned the inmates to the cell and that he could not move them (*id.* ¶ 11; doc. 54-2, Arens aff. ¶¶ 8-10). Defendant Rich informed both inmates of this conversation (doc. 54-1, Rich aff. ¶ 11; doc. 54-2, Arens aff. ¶ 10). Defendant Arens states in his affidavit that inmates constantly allege that they cannot share a cell with each other when paired as cell mates, but in his experience, it is rarely true. Further, defendant Arens states this excuse is commonly used during night cell changes because the inmates know that the staff handling Classification and cell changes are off duty (doc. 54-2, Arens aff. ¶ 9).

Approximately thirty minutes later, defendant Rich saw the plaintiff breaking the door and window of his cell (doc. 44-5, incident report; doc. 54-1, Rich aff. ¶ 12). Defendant Rich told the plaintiff to stop, but the plaintiff ignored this directive (doc. 54-1, Rich aff. ¶¶ 12-13). The plaintiff shattered the window, and defendant Rich administered a small burst of chemical munitions into the cell to maintain order (*id.*). Moments later, defendant Rich heard a commotion from the cell, and first responders and defendant Rich

---

[1] On November 18, 2014, the defendants submitted supplemental affidavits from defendants Rich and Arens that were meant to replace the affidavits originally attached to their response in opposition to the motion for summary judgment (doc. 54; *see* docs. 44-3, 44-4).

found the plaintiff on the floor and Inmate Clark on his knees in the cell (*id.* ¶ 15). Both inmates had injuries (*id.*). Defendant Rich, with the aid of several officers, handcuffed the inmates and transported them to Medical for treatment (*id.* ¶ 16).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the

6

outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### *Federal Rule of Civil Procedure 56(d)*

As noted above, the plaintiff styled his response in opposition to the motion for summary judgment as a "Motion for Rule 56(d)" (doc. 75). Federal Rule of Civil Procedure 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). In an affidavit in support of his response in opposition to the motion for summary judgment, the plaintiff states he "has been denied" certain evidence so that he cannot present the testimony of six inmates who would support his version of the incident (doc. 75-2).

"[N]onmovants do not qualify for Rule 56(d) protection where they had the opportunity to discover evidence but chose not to." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014) (citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246 (4th Cir. 2002)). Here, the plaintiff sent the defendants interrogatories, two requests for admission, and two requests for production of documents, but he never requested the names and locations of fellow inmates (*see* doc. 77, def. reply at 3). However, in his second motion to compel (doc. 36, 2nd motion to compel ¶ 24) filed in October 2014, the plaintiff asserted that the defendants did not fully respond to his tenth request for production, which requested, "any other books, documents or other tangible things and the identity and location of persons having knowlage [sic] of any discoverable matter as stated in Rule 26(b)(1) . . ." (*id.*). The plaintiff admitted that the defendants' response included themselves, Inmate Clark, Sergeant Roach, and hundreds of pages of

7

6:14-cv-02445-JDA     Date Filed 07/08/15    Entry Number 78    Page 8 of 14

documents (*id.*); however, the plaintiff argued that the defendants did not include the names and locations of "the inmates who shared the ventalation [sic] vents with plaintiff's cell, which was 3 other cells and would total 6 inmates, who, because of the shared vent heard everything that took place" (*id.*). In their response in opposition to the motion to compel, the defendants asserted that they responded properly to this request and all others discovery requests, and the plaintiff's request for information regarding fellow inmates posed significant security related concerns (doc. 52, def. resp. at 2). The undersigned denied the motion to compel (doc. 64).

As argued by the defendants, the plaintiff cannot dispute that the information regarding these other inmates is in the possession of a third party, namely the SCDC. While defendants are employees of the SCDC, it is undeniable that they are not records custodians or administrators. As such, the requested information is not in their possession, custody, or control. The defendants note that all discovery provided to the plaintiff to date is information the defendants received in connection with their own discovery efforts. The plaintiff had every opportunity during the discovery period to acquire this allegedly essential information from the SCDC, and he did not do so. Furthermore, assuming the defendants could identify the inmates and further assuming that the inmates heard the incident at issue and would agree to testify on the plaintiff's behalf, this information does not create a genuine issue of material fact concerning the subjective element of a deliberate indifference claim, the doctrine of respondeat superior, qualified immunity, or Eleventh Amendment immunity.

Based upon the foregoing, the plaintiff's Rule 56(d) motion should be denied, and the district court should consider the defendants' motion for summary judgment.

***Failure to Protect***

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation and

8

internal quotation marks omitted). However, not every injury suffered by a prisoner at the hands of another "translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. Liability for a violation of a prisoner's Eighth Amendment rights in a failure to protect case

> Attaches only when two requirements are met. First, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." For a claim based on a failure to prevent harm, the plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm." . . . . Second, the prison official must have a "sufficiently culpable state of mind" to be held liable. "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . ."

*Makdessi v. Fields*, No. 13-7606, 2015 WL 1062747, at *5 (4th Cir. Mar. 12, 2015) (quoting *Farmer*, 511 U.S. at 834). Here, it is undisputed that the plaintiff suffered serious physical injuries as a result of the incident at issue. Accordingly, the first requirement is met. *See id.*

With regard to the second requirement, a prison official cannot be found liable unless it is shown that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that he also drew the inference. *Farmer*, 511 U.S. at 837. The Supreme Court explained in *Farmer* that "deliberate indifference" entails "more than ordinary lack of due care for the prisoner's interests or safety," and "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835 (citation omitted). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious." *Id.* at 842 (citations omitted). Furthermore,

9

> A prison official remains free to rebut the deliberate indifference charge, even in the face of an obvious risk. "Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." . . . But absent successful rebuttal, they may be held liable for obvious risks they must have known. . . .

*Makdessi*, 2015 WL 1062747, at *6 (quoting *Farmer*, 511 U.S. at 844).

Here, under both the plaintiff's and the defendants' versions of the incident, the plaintiff told defendant Rich that he and his cellmate were going to fight (doc. 54-1, Rich aff. ¶ 7; doc. 66, 2nd amended comp. at 4, 7).[2] The plaintiff claims that he also told defendant Rich that he "feared for his life" and wanted to be placed in protected custody (doc. 75-4, pl. aff. ¶¶ 4, 7; doc. 66, 2nd amended comp. at 4, 7). However, it is undisputed that the plaintiff did not tell any of the defendants that Inmate Clark had a knife or that Inmate Clark had threatened him, and there is no evidence that the defendants ever saw a knife (*see* doc. 66, 2nd amended comp. at 4 (stating that when the officers approached the cell, Inmate Clark hid the homemade knife)). Notably, in his affidavit before this court, the plaintiff states that he broke the cell window, contradicting his claim in the verified complaint that Inmate Clark broke the window by swinging a lock and supporting defendant Rich's statement that he saw the plaintiff break the window (*compare* doc. 75-1, pl. resp. m.s.j. at 4 and doc. 75-4, pl. aff. ¶¶ 17, 20 *with* doc. 66, 2nd amended comp. at 8; *see* doc. 54-1, Rich aff. ¶¶ 12-13). The plaintiff cannot create a material issue of fact by simply submitting contradictory sworn statements. *Rohrbough v. Wyeth Laboratories*, 916 F.2d 970, 975-76 (4th Cir.1990). Nonetheless, it is undisputed that the plaintiff *did not tell* the defendants that

---

[2]The plaintiff states in his affidavit submitted in support of his opposition to the motion for summary judgment that he "never told Defendants at any time that I did not get along with Inmate Clark and that we were going to fight" (doc. 75-4, pl. aff. ¶ 8). In his complaint, however, the plaintiff alleges that he told defendant Rich three times that he and Inmate Clark were going to fight (doc. 66, 2nd amended comp. at 4, 7).

10

Inmate Clark broke the window or that Inmate Clark had a lock on a cord; rather, he told the officers that he broke the window (doc. 54-1, Rich aff. ¶ 12 (defendant Rich saw the plaintiff break the window); doc. 66, 2nd amended comp. at 9 (plaintiff told the officers he broke the window)). Moreover, defendant Rich states in his affidavit that inmates constantly contend they cannot share a cell with each other, and it is rarely true. He further states that he had no reason to believe the plaintiff's statement was truthful as, to the best of his knowledge, the plaintiff did not have a history of fighting or trouble with any other inmates, and neither the plaintiff nor Inmate Clark ever filed a request for protective custody. Further, to the best of defendant Rich's knowledge, Inmate Clark never voiced displeasure with his assignment to the plaintiff's cell, nor did he threaten the plaintiff (doc. 54-1, Rich aff. ¶¶ 8-10). Defendant Arens also attests in his affidavit that inmates constantly allege that they cannot share a cell with each other when paired as cell mates, but in his experience, it is rarely true. Further, defendant Arens states that this excuse is commonly used during night cell changes because the inmates know that the staff handling Classification and cell changes are off duty (doc. 54-2, Arens aff. ¶ 9).

The undersigned finds that the plaintiff has failed to show that the defendants exhibited deliberate indifference to a specific, known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir.1987). Viewing the evidence in a light most favorable to the plaintiff, he told the officers that he "feared for his life," but he did not tell the officers that his cellmate had threatened him or that his cellmate had a weapon (a knife and a lock on a cord). According to the defendants' testimony, prisoners frequently say that they cannot share a cell, but it is rarely true, and such claims are often made during night cell changes. "Of the many difficulties in managing prisons rife with acts of violence, perhaps the most difficult is discerning who is actually at risk of being harmed and who is simply taking advantage of a dangerous environment to manipulate a change in housing status. This court is mindful of its limitations in making such determinations." *Oliver v. Harbough*, C.A.

11

No. ELH-11-996, 2011 WL 6412044, at *5 (D. Md. Dec. 19, 2011). There is also no evidence that the defendants knew of any previous issues between the plaintiff and his cellmate; rather, there was only a generalized claim by the plaintiff that he wanted to be moved out of the cell because he and his cellmate were going to fight. Based upon the foregoing, the plaintiff does not demonstrate that the defendants knew of or disregarded an excessive risk to his safety, and his claims fail to show deliberate indifference necessary to state an Eighth Amendment claim.

*Qualified Immunity*

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*.

To determine whether qualified immunity applies, a district court must determine a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865-66 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, the plaintiff's allegations fail to demonstrate that the defendants violated his constitutional rights. Therefore, the undersigned finds the defendants are entitled to qualified immunity.

*Eleventh Amendment Immunity*

To the extent the plaintiff is seeking damages against the defendants in their official capacities, they are entitled to Eleventh Amendment immunity. *See Brown v. Lieutenant Governor's Office on Aging*, 697 F. Supp. 2d 632, 635 (D.S.C. 2010) (citing *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995)).

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 44) be granted. The attention of the parties is directed to the notice on the next page.

s/Kevin F. McDonald
United States Magistrate Judge

July 8, 2015
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk of Court**
> **United States District Court**
> **300 East Washington Street — Room 239**
> **Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).